No. 40,120

Joseph J. Mathias, *Appellee*, v. Hal W. Dickerson, *Appellant.*

(298 P. 2d 219)

Opinion filed June 9, 1956.

*Keith Eales,* of Wichita, argued the cause, and *Lloyd M. Kagey, Max L. Hamilton,* and *Daniel D. Dwyer,* all of Wichita, were with him on the briefs for the appellant.

*P. K. Smith,* of Wichita, argued the cause, and *F. C. McMaster,* of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This was an action upon a contract of sale of a business brought by an employee of the seller against the buyer for wages due from the seller under express provisions of that agreement to the effect the buyer was to assume and pay all outstanding obligations existing in connection with the operation of the business at the time of the execution of the contract as a part of the purchase price.

The cause originated in the city court of Wichita where judgment was rendered for the full amount claimed by plaintiff in his bill of particulars. On appeal to the district court plaintiff, after a trial by such court, recovered a like judgment and this appeal followed.

At the outset we pause to note a contention, based on the premise the initial notice of appeal is limited to error in rendition of the judgment only, that defendant is not entitled to a review of trial and post trial errors. Prior to the hearing of the cause defendant sought and obtained permission of this court to amend his notice of appeal to include alleged errors in the overruling of his motion for a new trial and all other adverse orders and rulings. Thereafter he amended his notice accordingly. In that situation plaintiff's motion to dismiss the appeal, regardless of its merit at the time it was filed, cannot now be upheld. See G. S. 1949, 60-3310 and our decisions (*McQuin v. Santa Fe Trail Transportation Co.*, 155 Kan. 111, 122 P. 2d 787; *Boss v. Brown*, 132 Kan. 86, 88, 294 Pac. 878) holding that, where a valid appeal has been taken from a judgment, this court will permit the notice of appeal to be amended so as to include an appeal from the order overruling the motion for a new trial.

The facts essential to a disposition of the issues involved in this case can be gleaned from the pleadings, admissions of the parties, and our version of the evidence as presented. Therefore they will be so stated.

On May 18, 1951, the defendant Hal W. Dickerson entered into a contract in writing with Hal A. Farha, who for sometime prior thereto had owned and operated the business, whereby Dickerson purchased the going business known as the Commodore Club, located in the basement of the Brown Building in Wichita, including all personal property belonging to or used in connection with the operation of such Club. In such agreement, and as a part of the consideration for the purchase price, Dickerson expressly agreed to assume and pay all outstanding obligations then existing in connection with the operation of the business of such Club.

On the date of the execution of such contract Farha was indebted to the plaintiff, Joseph J. Mathias, by way of past due salary in the sum of $960 for personal services and work performed by him in the operation of the business from September 10, 1950, to the date on which Farha ceased to operate and carry on the business of such Club which, so far as the record discloses, was a few days prior to the date of the execution of the contract.

There is some quibbling between the parties as to the nature of the duties performed by plaintiff during the period of time in question as Farha's employee. However, for our purposes, it can be

stated that during that interim he was employed as supervisor of the billiard parlor, lunch counter, and card room of the Club; his duties consisting of serving food, taking care of billiard tables, taking care of the card games and, in the absence of Farha, accepting bets and wagers for the latter who, in part, at least, was operating the Club in violation of the gambling laws of the state.

With facts before it, as heretofore related, and in the face of contentions, strenuously advanced by defendant that plaintiff's claim was unenforceable and void for the reason services rendered by him to Farha included services prohibited by the penal statutes of the State of Kansas, the trial court found for the plaintiff and rendered judgment accordingly. Thereupon defendant took the action which resulted in bringing the cause to this court where he states in his brief the sole issues involved on appellate review are:

"1. In an action for arrears of wages or salary, where plaintiff's own evidence discloses the unlawful character of the enterprise in which the wages or salary were earned, and that the services performed by the plaintiff were prohibited by penal statutes, may a court properly overrule a demurrer to plaintiff's evidence, when the demurrer is brought on the ground that the contract of employment, under which the wages became due, contemplated criminal activities and conduct and was therefore unenforceable and void.

"2. Where the consideration for a contract of employment is single and unapportioned, and where it is established by the uncontroverted evidence of both parties to a lawsuit that the business or enterprise in which the employment is performed is legitimate in part and illegal in part, and that the services rendered by the plaintiff-employee included acts in contravention of penal statutes; and where, in an action for wages earned under the contract of employment, the trial court finds as a fact that the plaintiff-employee performed criminal acts which 'were incidental and a minor part of his employment', may such court properly render judgment for the wages or salary allegedly earned under such contract?"

And on oral argument concedes that his defense to the action is based strictly on the theory plaintiff's employment was of illegal character and therefore his claim with respect thereto is unenforceable in a court of law.

Resort to appellant's own statement of the issues involved, which we pause to here note are of such nature they can be considered and disposed of together, an analysis of his contentions with respect thereto, and an examination of all Kansas cases cited in support thereof, disclose that appellant's position on appellate review is that an employee cannot successfully maintain *an action for wages earned under a contract of employment* where it appears such contract contemplated and involved the performance of criminal activi-

ties, conduct and service. Basically this position is predicated on the rule of universal application that courts will not aid either party to an illegal agreement but leave them where it finds them. We have no quarrel with the sound and salutary rule on which appellant relies. In fact no court has been more consistent in applying it than our own. The difficulty from appellant's standpoint rests not in the rule he seeks to apply but on the fallacious assumption the instant action is one to recover on the original contract of employment. Here, it appears from the uncontroverted pleadings and evidence of record, appellee founds his right to recover on appellant's separate and distinct contract with Farha to assume and pay appellee, as a part of the consideration for such contract, the outstanding wage obligation due him from Farha at the time appellant purchased the business in question. Under such conditions and circumstances appellee's cause of action is not based on the illegal contract of employment but on the independent contract of appellant to pay him in accord with the terms of the latter's agreement with Farha; hence, under another rule announced by our own decisions and well supported by other authorities, the defense of illegality in the appellee's original contract of employment cannot be invoked by appellant to defeat the instant action.

The conclusion just announced is supported by the early *Per Curiam* decision of this court in *Coppedge v. Goetz,* 67 Kan. 851, 73 Pac. 908, where, in disposing of a contention similar to the one relied on by appellant in the instant case, it is said:

"It is also contended that plaintiff could not recover against defendants without showing its own unlawful connection with Conner in violating the prohibitory law of Kansas, and therefore could not maintain this action. If a plaintiff cannot prove his cause without showing that he has violated the law in the transaction out of which his alleged cause of action arises and upon which he relies for a recovery, a court of justice will not assist him. (1 Suth. Dam., 2d ed., § 5; *Falk v. Brewing Co.,* 10 Kan. App. 248, 62 Pac. 716.) This principle only applies, however, where the cause of action is depending immediately upon the illegal transaction for its support. In the present case the plaintiff did not rely upon its illegal contract with Conner for a right of recovery. Its cause of action against the defendants for the wrongful destruction of its property does not depend upon or grow out of the unlawful transaction between it and Conner." (pp. 852, 853.)

For a general statement of the rule as recognized and applied in other jurisdictions see 12 Am. Jur., Contracts, 720 § 211, where the following statement appears:

"The rule that the law will not enforce an illegal agreement has application

only as between the immediate parties thereto, and hence one in possession of the fruits of an illegal transaction to which he was not a party cannot invoke the rule. Thus, when one party to an illegal agreement pays money in execution and satisfaction of it to a third person for the use of the other party to the agreement, upon a promise by the third person to pay it over to the other party, the third person cannot defend an action for the money on the ground of the illegality of the agreement in satisfaction of which it was paid. Since he in no way participated in the illegal agreement and his obligation to pay over the money is a new and different agreement, the plaintiff need not rely upon the illegal agreement to establish his case, but merely upon the new agreement to pay over the money. This latter agreement the court will enforce, and will not allow the defendant to retain the money because of the illegal agreement in which he had no privity. . . ."

See, also, 17 C. J. S., Contracts, 671, 672 § 283, which reads:

"The defense of illegality, although open to the parties and those claiming under them, cannot as a general rule be invoked by third persons. . . .

"Where, in execution or satisfaction of an illegal contract, one of the parties thereto pays money or delivers property to a third person for the use of the other party to the contract, on his promise, express or implied, to deliver such property to such other party, such third person cannot defend an action by the latter for such property on account of the illegality of the contract in pursuance of which it was delivered to him. In such case the action is not based on the illegal contract, but on the independent contract of such third person to deliver over the property received by him, although an exception to this rule has been recognized in cases of contracts having a tendency to injure the public service."

Time will not permit citation or discussion of the numerous cases wherein the foregoing rule has been considered, discussed and applied. However, and without attempting to exhaust the field, it may be stated that ample support for such rule, as well as the conclusions heretofore announced, is to be found in decisions handed down by the highest court of this land. See *Armstrong v. American Exchange Bank*, 133 U. S. 433, 33 L. Ed. 747, 10 S. Ct. 450; *Planters' Bank v. Union Bank*, 83 U. S. 483, 21 L. Ed. 473; *Brooks v. Martin*, 69 U. S. 70, 17 L. Ed. 732; *McBlair v. Gibbes et al.*, 58 U. S. 232, 15 L. Ed. 132; *Armstrong v. Toler*, 24 U. S. 258, 6 L. Ed. 468.

What has been heretofore stated and held disposes of the issues raised on appeal and compels an affirmance of the judgment. Therefore such judgment is affirmed.